# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric Perez, | No. CV 19-05602-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

On November 8, 2019, Plaintiff Eric Perez, who is in the custody of the Arizona Department of Corrections (ADC) and is represented by counsel, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. On January 15, 2020, he filed a Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4). Plaintiff has paid the filing and administrative fees.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does

not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

## II. Complaint

In his three-count Complaint, Plaintiff sues former ADC Director Charles L. Ryan; current ADC Director David Shinn; Arizona State Prison Complex (ASPC)-Lewis Warden Berry Larson; ASPC-Lewis Assistant Deputy Warden Lindsay Chavez; Correctional Officers (COs) Denault, Palomino, Coscorelli, Hill, Wickware, Reyes, and Soliz; Sergeants Fink, Aven, and Parra; and Nurse Raymond Ramirez for violations of the Eighth Amendment. Plaintiff is seeking money damages, along with attorney's fees and costs. The following factual summary derives from Plaintiff's Complaint and is taken as true solely for the purposes of the statutory screening process.

Plaintiff states that he had a history of assisting the Tucson Police Department ("TPD") prior to entering Arizona Department of Corrections (ADC) custody in March 2015. (Doc. 1 at 6.) A TPD Lieutenant and the Assistant Legal Defender wrote letters to the Judge, recommending that Plaintiff be housed in protective custody due to Plaintiff's purported role as a confidential informant. (*Id.* at 7.)

Plaintiff was housed at the Arizona State Prison Complex (ASPC)-Lewis. On

November 9, 2017, when Plaintiff returned to his cell after showering, Plaintiff alleges that Defendant Denault opened all the cell doors in Plaintiff's pod, "knowing that [Plaintiff] would be assaulted as a result." (*Id.*) Two inmates, "Monster" and "Insane," proceeded to run into Plaintiff's cell; assault him by punching him in the face; and leave, locking the cell door behind them. (*Id.*)

Later that day, Plaintiff alleges that Defendants Fink and Aven escorted him to speak with Defendant Chavez, leaving Plaintiff's cell door open so that, as Plaintiff claims, other prisoners could steal his belongings. (*Id.* at 8-9.) Defendant Chavez told Plaintiff that the CO who had been working in the control room had alleged that Plaintiff exposed himself to her while he was in the shower. (*Id.* at 9.) Plaintiff denied the accusation and suggested that Defendant Chavez "check the pod camera recording." (*Id.*) Plaintiff was then escorted by Defendants Fink and Aven to the Inmate Movement Office to receive a change in housing. (*Id.*)

After being rehoused,[1] Plaintiff explained his situation to his new inmate, "Mono." Both Mono and Plaintiff believed they had been housed together so that Mono could assault Plaintiff. (*Id.*) Mono allegedly sent another inmate, "30," to Plaintiff's former pod; 30 reported to Plaintiff that inmates in Plaintiff's former pod were circulating rumors that Plaintiff was a confidential informant and had exposed himself to Defendant Denault. (*Id.* at 10.)

After lunch the next day, Defendant Palomino allegedly opened all the pod's doors by using the "security override" feature. (*Id.*) At that point, 30 entered Plaintiff's cell and assaulted him, punching him in the face and body. (*Id.*) Plaintiff says that 30 told him the "'staff' wanted [Plaintiff] to get 'f---ed up' in retaliation for exposing himself to another CO" and that after he had been assaulted, he would be forgiven. (*Id.* at 10-11.) Later that day, Plaintiff was moved to a new cell in the Buckley Unit. (*Id.* at 11.) There, one of the inmates allegedly told Plaintiff that the COs had announced during mealtime that Plaintiff

---

[1] It appears Plaintiff was moved to ASPC-Lewis's Buckley Unit.

had exposed himself to a female CO. (*Id.*) Plaintiff was then transferred to the Refuse to House ("RTH") Unit. (*Id.*)

On November 16, 2017, Plaintiff was told by two inmates who had heard he was coming from the RTH Unit, "You better not come out, if you do you're getting f---ed up." (*Id.*) Plaintiff asked a CO who had witnessed the exchange if he would write an Incident Report. (*Id.*) The CO agreed. (*Id.*) Later that day, Plaintiff received a letter from an inmate in 4-D pod who stated that Plaintiff "had better not go to 4-D Pod" or he would get "smashed." (*Id.*) The letter also stated that people were "waiting for [Plaintiff] and that CO 'Costco'"—Defendant Coscorelli—"had already filled everyone in about [Plaintiff] having exposed himself to [Defendant] Denault." (*Id.*) That night, Plaintiff's mother advised Defendant Chavez that her son was in a dangerous situation because staff and inmates had been "spreading rumors about him and allowing assaults." (*Id.* at 12.)

On November 17, 2017, Defendants Hill and Wickware allegedly allowed an inmate to enter the RTH Unit and announce to several cells that Plaintiff was an "S.O.," or sex-offender, and that inmates would be compensated with drugs if they "smash[ed]" him. (*Id.*) At 11:30 that night, Defendant Reyes and another CO allegedly opened the cell doors of four inmates who then entered Plaintiff's cell, assaulted him, and left, locking the door behind them. (*Id.*) As a result of that assault, Plaintiff claims he sustained injuries to his face, ribs, and teeth. (*Id.* at 12, 13.)

On November 19, 2017, Plaintiff visited Defendant Ramirez, a nurse, for the injuries to his head, face, and chest. (*Id.*) Defendant Ramirez wrote that Plaintiff's breathing was painful but that he showed no signs of distress. (*Id.*) He also gave Plaintiff ibuprofen and an order for medical ice. (*Id.*) Ramirez did not send Plaintiff to a provider for examination, however, and Plaintiff was not seen by a dentist until four months later. (*Id.*)

On November 27, 2017, Plaintiff filed an informal complaint regarding the assault. On December 2, 2017, Plaintiff received a letter from an inmate "Solo" warning of additional assaults. (*Id.*) The following day, Plaintiff told a CO II that he feared for his life and needed to be transferred. (*Id.*) That CO II took Plaintiff to the Inmate Movement

Office, where Plaintiff then wrote out a statement regarding the November 17, 2017 assault and provided four threatening letters that he had received from other inmates. (*Id.* at 14.) Defendant Parra attached the letters to Plaintiff's statement and, according to Plaintiff, advised Plaintiff that he had heard about staff directing attacks against Plaintiff and would document all the information he had obtained about the assault. (*Id.*)

Plaintiff was then transferred to Bachman Detention Unit, where he was housed with two inmates who told Plaintiff they had heard from staff that Plaintiff was a confidential informant who had exposed himself to a female CO. (*Id.*) They also stated that they planned to "f--- him up." (*Id.*) Plaintiff notified staff about their threat and was moved to the Stiner Unit. (*Id.*)

On December 5, 2017, Plaintiff filed a Health Needs Request ("HNR") seeking treatment for the pain in his ribs and surrounding area. (*Id.*) Three days later, he filed another HNR in which he provided a more detailed account of his injuries, stated that he was in severe pain, and that he was experiencing blurred vision as a result of the blows he had suffered to his head. (*Id.* at 14-15.) On December 11, 2017, Plaintiff was seen by a nurse, who told Plaintiff he would be sent for x-rays later that week. (*Id.* at 15.)

On December 14, 2017, Plaintiff had x-rays taken at the medical complex, where he also spoke to a CO who allegedly confirmed that other COs had said they would not help Plaintiff because he was a "piece of s---." (*Id.* at 16.) The following day, Plaintiff was transferred to Rast Max Unit. (*Id.*) Plaintiff's new cellmate said he knew about the alleged exposure incident and Plaintiff's confidential informant status and told Plaintiff he needed to leave the pod. (*Id.*)

On December 17, 2017, Plaintiff submitted an HNR requesting a psychological appointment and a transfer to the pod for seriously mentally ill inmates ("SMI") inmates. (*Id.*) The following day, just before midnight, Plaintiff was transferred to a new cell in an unidentified unit. (*Id.*)

On December 21, 2017, Plaintiff submitted another HNR, stating that he continued to suffer "tremendous pain" in his ribs. (*Id.*) On January 2, 2018, Defendant Soliz

allegedly told Plaintiff's neighbor inmate that he should not "mess with" Plaintiff because Plaintiff was a confidential informant. (*Id.*) Later that day, Soliz told other inmates in the pod the same thing. (*Id.* at 18.) Plaintiff claims that Soliz also instructed another inmate to tamper with Plaintiff's foodtrap door so that Plaintiff would get in trouble.[2] (*Id.*)

On January 12, 2018, Plaintiff filed an appeal from his November 27, 2017 grievance, to which he had received no reply. (*Id.* at 19.) Plaintiff also asked to speak with a sergeant about his housing situation. (*Id.*) At some point, Plaintiff submitted another HNR concerning the pain in his ribs and was seen on the nurse's line.

On February 2, 2018, Plaintiff submitted another HNR concerning the pain in his ribs. (*Id.* at 20.) On February 5, 2018, he was seen on the nurse's line. On February 6, 2018, he filed another HNR concerning his rib pain, headaches, and blurred vision. (*Id.*) He was seen for these conditions on February 8, 2018. (*Id.*) On February 21, 2018, he was seen by on-site dental urgent care for severe pain in his upper front teeth. (*Id.*) On March 14, 2018, Plaintiff was seen by a dentist. (*Id.*) The dentist noted considerable damage in three of his teeth and recommended extraction of one tooth. (*Id.*) According to Plaintiff, the trauma he had suffered during the November 17, 2017 assault caused the nerves in his tooth to become necrotic. (*Id.* at 21.) Plaintiff elected to have a root canal instead of an extraction "in an effort to save his front teeth for as long as possible." (*Id.*) But the teeth eventually had to be extracted. (*Id*. at 22.)

On May 30, 2018, Plaintiff had a classification review. (*Id.* at 21.) Although Plaintiff wished to be reclassified out of maximum custody, he did not feel safe anywhere in ASPC-Lewis and was unable to go to "SMI table time," recreation, or "CO classes" because he believed his life was in danger. (*Id.* at 22.)

On December 1, 2018, Plaintiff submitted an HNR requesting an appointment with an eye doctor because he was still experiencing blurred vision and headaches. (*Id.*) Plaintiff says that he is unable to read for any length of time without getting a painful

---

[2] According to Plaintiff, "[t]ampering with a foodtrap door is a punishable offense that leads to loss of privile[]ges and other disciplinary actions against the person whose foodtrap door is tampered with." (Doc. 1 at 18.)

headache, and his teeth eventually had to be extracted. (*Id.*) In addition, dangerous rumors continue to follow Plaintiff and cause him to live in a state of fear for his life. (*Id.* at 22.)

In **Count One**, Plaintiff asserts a failure-to-protect claim, alleging that Defendants Denault, Fink, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz spread rumors about Plaintiff's confidential informant status and alleged act of exposure even though they knew such rumors would put him in danger. According to Plaintiff, these Defendants also failed to prevent the harm they knew would result from such rumors, thereby causing Plaintiff to be assaulted and injured, in violation of his Eighth Amendment rights. (*Id.*)

In **Count Two**, Plaintiff asserts a failure-to-train and failure-to-supervise claim, alleging that Defendants Ryan, Larson, Fink, Aven,[3] Chavez, and Parra maintain an unwritten custom and practice of permitting front-line correctional officers—including Defendants Denault, Fink, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz—to control prisoners by spreading rumors that they know will prompt assaults and that this custom and practice caused him to be assaulted and injured.

In **Count Three**, Plaintiff claims that Defendant Ramirez failed to provide constitutionally adequate medical care when he refused to send Plaintiff to a provider for examination, despite his knowledge that Plaintiff had potentially serious injuries. According to Plaintiff, Ramirez's conduct led to the extraction of teeth that could have been saved by timely dental intervention.

**III. Failure to State a Claim**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278,

---

[3] Although Defendant Aven is not listed in Count Two, he is included among the Defendants identified elsewhere as the "Supervisory Defendants," and is not named in any other count. (Doc. 1 at 2.) Accordingly, the Court construes Count Two as having been asserted against Defendant Aven.

1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A. Defendant Fink

Plaintiff alleges that Defendant Fink left Plaintiff's cell door open so that other prisoners could steal his belongings while Plaintiff was speaking with Defendant Chavez. This allegation is not sufficient to state a claim for failure to protect against Defendant Fink, as there is no indication that the failure to close Plaintiff's cell door on that occasion placed him at substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (to state a claim for threat to safety under the Eighth Amendment, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were "deliberately indifferent" to those risks).

Moreover, any loss of property that Plaintiff suffered as a result of Fink's conduct is not compensable under § 1983. A claim for lost property would arise, if at all, under the Due Process Clause of the Fourteenth Amendment. "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Even unauthorized and intentional deprivations of property do not violate the procedural requirements of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The availability of a common-law tort suit against a state employee constitutes an adequate post-deprivation remedy. *Id.* at 534-35. Moreover, Arizona provides a meaningful and adequate post-deprivation remedy through the prison grievance system, specifically Department Order (DO) 909(8.0) (formerly DO 909.09). *Dennison v. Ryan*, 522 F. App'x 414, 417-18 (9th Cir. 2013) (citing DO 909.09); *Aldrete v. Ariz. Dep't of Corr.*, 2011 WL 30959, at *7 (D. Ariz. Jan. 3, 2011) (same); *see also Wright v. Riveland*, 219 F.3d 905, 918 (9th Cir. 2000) (both state tort claims and prison grievance procedures provide adequate post-deprivation remedies). Accordingly, the

Court will dismiss Count One insofar as it asserts a claim against Defendant Fink.

**B.    Defendant Ramirez**

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must allege (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley*

*v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

At best, Plaintiff's allegations against Defendant Ramirez suggest that Ramirez was negligent. Plaintiff does not allege sufficient facts regarding his appointment with Ramirez to show that Ramirez was aware of a substantial risk of serious harm to Plaintiff. Accordingly, Plaintiff has failed to state a claim in Count Three, and this Count will be dismissed.

### C. Official Capacity Claims

Assuming that Defendants Denault, Palomino, Chavez, Coscorelli, Wickware, Hill, Reyes, and Soliz could be sued in their official capacities, such claims would be duplicative of the official capacity claims asserted in Count Two. Accordingly, the official capacity claims against these Defendants will be dismissed.

## IV. Claims for Which an Answer Will Be Required

Plaintiff has stated a claim in Count One against Defendants Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz in their individual capacities. Plaintiff has also stated a claim in Count Two against Defendant Shinn in his official capacity and Defendants Ryan, Larson, Fink, Aven, Chavez, and Parra in their individual and official capacities.

## V. Motion for Preliminary Injunction and Temporary Restraining Order

In his Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiff seeks an order requiring Defendants to transfer Plaintiff to a facility where he will be safe from attacks. According to the Motion, Plaintiff was stabbed by Inmate "Monster" on December 19, 2019, despite the fact that Monster had attacked Plaintiff two years prior, as described in the Complaint, and should never have been allowed to gain access to Plaintiff. Based on this incident, Plaintiff argues that: (1) he is likely to succeed on the merits of his failure to protect and failure to train and supervise claims; (2) he is likely to suffer irreparable harm in the absence of an injunction because Defendants have continued to

expose him to a risk of attack by other inmates; (3) the balance of equities tips in Plaintiff's favor; and (4) the public interest favors an injunction.

Defendants Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, Soliz Shinn, Larson, Fink, Aven, and Parra will be required to respond to the Motion.[4]

**IT IS ORDERED:**

(1) Count One is **dismissed** as against Defendant Fink.

(2) Count Three is **dismissed**.

(3) Defendant Ramirez is **dismissed**.

(4) The official capacity claims against Defendants Denault, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz are **dismissed**.

(5) The following Defendants must answer, or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure, to the following portions of the Complaint:

    (a) Defendants Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz must answer Count One, in their individual capacities;

    (b) Defendants Ryan, Larson, Fink, Aven, Chavez, and Parra, must answer Count Two in their individual and official capacities; and

    (c) Defendant Shinn must answer Count Two in his official capacity.

(6) Plaintiff must either serve each Defendant or seek a waiver of service for each Defendant.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m).

---

[4] Because Defendant Ryan no longer serves as the Director of the Arizona Department of Corrections, he will not be required to respond to Plaintiff's Motion seeking prospective injunctive relief.

(8) Within **7 days** of being served with the Complaint and the Motion for Preliminary Injunction and Temporary Restraining Order, Defendants Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, Soliz, Shinn, Larson, Fink, Aven, and Parra must file a response to the Motion for Preliminary Injunction and Temporary Restraining Order. Plaintiff may file a reply within **5 days** of service of Defendants' response.

(9) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(10) This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1) and is **assigned to the standard track** pursuant to Rule 16.2(b)(3) of the Local Rules of Civil Procedure.

Dated this 21st day of January, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge