WO                                                                                          MH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric Perez,<br><br>               Plaintiff,<br><br>v.<br><br>Charles Ryan, et al.,<br><br>               Defendants. | No. CV 19-05602-PHX-MTL (JFM)<br><br>**ORDER** |

Now pending before the Court are Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4) and Motion for Ruling (Doc. 14). The Court will deny the Motion for Preliminary Injunction and Temporary Restraining Order. Plaintiff's Motion for Ruling will be granted in part insofar as Plaintiff seeks to expedite consideration of his Motion for Preliminary Injunction and Temporary Restraining Order. The Court will defer ruling on the balance of Plaintiff's Motion for Ruling, which will be construed as a separate request for injunctive relief, until Defendant has had an opportunity to respond to the new allegations in that Motion.

**I.      Background**

On November 8, 2019, Plaintiff Eric Perez, who is in the custody of the Arizona Department of Corrections and is represented by counsel, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. On January 15, 2020, he filed a Motion for Preliminary Injunction and Temporary Restraining Order. In a January 21, 2020 Order, the Court screened Plaintiff's Complaint and determined that he had stated, in Count One, a failure-

to-protect claim against Defendants Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz, in their individual capacities; and in Count Two, a failure-to-train claim against Defendant Shinn in his official capacity and Defendants Ryan, Larson, Fink, Aven, Chavez, and Parra in their individual and official capacities. Defendants were ordered to respond to the Complaint in accordance with Federal Rule of Civil Procedure 12(a) and Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, Soliz, Shinn, Larson, Fink, Aven, Chavez, and Parra were ordered to respond to the Motion for Preliminary Injunction and Temporary Restraining Order.[1]

Defendant Shinn, who waived service on January 28, 2020, filed a timely Response to the Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 7). The remaining Defendants have not yet been served.[2] On February 11, 2020, Plaintiff filed a Reply (Doc. 8). On February 24, 2020, Plaintiff filed a Motion for Ruling (Doc. 14). On February 26, 2020, he filed an additional attachment to his Motion for Ruling (Doc. 16).[3] The Court will grant the Motion for Ruling in part as set forth herein and deny the Motion for Preliminary Injunction and Temporary Restraining Order.

## II. Motion for Ruling

In his Motion for Ruling, Plaintiff asks the Court to rule on his Motion for Preliminary Injunction and Temporary Restraining Order without a response from the unserved Defendants, noting that Defendant Shinn is the only Defendant with the power to enforce an injunction. Plaintiff also asks the Court to consider two additional documents in support of his request for preliminary injunctive relief—a text message that Plaintiff's

---

[1] Defendant Ryan was not required to respond to the Motion for Preliminary Injunction and Temporary Restraining Order because he no longer serves as the Director of the Arizona Department of Corrections.

[2] Following the issuance of a February 13, 2020 Order to Show Cause (Doc. 9) regarding Plaintiff's failure to serve the remaining Defendants, Plaintiff was granted an extension of time and given until April 20, 2020, to complete service on Defendants Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, Soliz, Ryan, Larson, Fink, Aven, Chavez, and Parra. (Doc. 13.)

[3] The following day, Plaintiff filed a Motion to Seal, which is addressed in a separate Order (Doc. 18.)

mother sent to his attorney on January 26, 2020, and a timeline of events that Plaintiff created and sent to his attorney on or before February 4, 2020. In addition to these documents, Plaintiff also submitted, on February 26, 2020, a police report filed by his mother.

The Court will grant the Motion for Ruling insofar as Plaintiff seeks to expedite consideration of his Motion for Preliminary Injunction and Temporary Restraining Order by seeking relief from Defendant Shinn alone. To the extent Plaintiff requests consideration of additional evidence in support of his Motion for Preliminary Injunction and Temporary Restraining Order, the Court construes this request as a separate motion for preliminary injunctive relief based on new allegations and evidence concerning the prisoner identified as "Insane." Defendant Shinn will be given an opportunity to respond to this motion, after which Plaintiff may file a reply and the Court, in turn, will issue a ruling.

**III. Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015) (movant "bears the heavy burden of making a clear showing' that it [i]s entitled to a preliminary injunction"); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors

are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**IV. Arguments**

    **A. Motion**

In his Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiff seeks an order requiring Defendants to transfer Plaintiff to a facility "where he will be safe from attacks by other prisoners." (Doc. 4 at 1.) He claims the allegations in his Complaint demonstrate that Defendants Denault, Fink, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz spread rumors about him knowing such rumors would lead to assaults by other prisoners, and that he is therefore likely to succeed on the merits of his claims against these Defendants. (*Id*. at 4-5.)

As relevant to the pending Motion, Plaintiff alleges in his Complaint the following: He was allegedly punched in the face on November 9, 2017, by inmates "Monster" and "Insane" after Defendant Denault opened all the cell doors in Plaintiff's pod, "knowing

are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**IV. Arguments**

    **A. Motion**

In his Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiff seeks an order requiring Defendants to transfer Plaintiff to a facility "where he will be safe from attacks by other prisoners." (Doc. 4 at 1.) He claims the allegations in his Complaint demonstrate that Defendants Denault, Fink, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz spread rumors about him knowing such rumors would lead to assaults by other prisoners, and that he is therefore likely to succeed on the merits of his claims against these Defendants. (*Id*. at 4-5.)

As relevant to the pending Motion, Plaintiff alleges in his Complaint the following: He was allegedly punched in the face on November 9, 2017, by inmates "Monster" and "Insane" after Defendant Denault opened all the cell doors in Plaintiff's pod, "knowing

are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**IV. Arguments**

    **A. Motion**

In his Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiff seeks an order requiring Defendants to transfer Plaintiff to a facility "where he will be safe from attacks by other prisoners." (Doc. 4 at 1.) He claims the allegations in his Complaint demonstrate that Defendants Denault, Fink, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz spread rumors about him knowing such rumors would lead to assaults by other prisoners, and that he is therefore likely to succeed on the merits of his claims against these Defendants. (*Id*. at 4-5.)

As relevant to the pending Motion, Plaintiff alleges in his Complaint the following: He was allegedly punched in the face on November 9, 2017, by inmates "Monster" and "Insane" after Defendant Denault opened all the cell doors in Plaintiff's pod, "knowing

that [Plaintiff] would be assaulted as a result."[4] (Doc. 1 at 7-8.) Plaintiff was then rehoused in the Buckley Unit, where he learned from his new cellmate that inmates were circulating rumors that Plaintiff was a confidential informant and had exposed himself to Defendant Denault. (*Id.* at 9-10.) The following day, Defendant Palomino allegedly opened all the pod's doors, allowing an inmate known as "30" to enter Plaintiff's cell and punch him in the face and body. (*Id.* at 10.) According to Plaintiff, "30" stated that "'staff wanted [Plaintiff] to get 'f---ed up' in retaliation for exposing himself to another C[orrectional] O[fficer].'" (*Id.* at 10-11.) Plaintiff was subsequently moved to a new cell in the Buckley Unit, where another inmate purportedly stated that correctional officers (COs) had announced during mealtime that Plaintiff had exposed himself to a female CO. (*Id.* at 11.)

Plaintiff was then transferred to the Refuse to House (RTH) Unit, where he received a letter from another inmate stating that people were "waiting for [Plaintiff]," that he would get "smashed" if he went to 4-D pod, and that Defendant Coscorelli "had already filled everyone in about [Plaintiff] having exposed himself to [Defendant] Denault." (*Id.*) On November 17, 2017, Defendants Hill and Wickware allegedly allowed an inmate to enter the RTH Unit and announce to several prisoners that Plaintiff was an "S.O.," or sex-offender, and that inmates would be compensated with drugs if they "smash[ed]" him. (*Id.* at 12.) Later that night, Defendant Reyes and another CO purportedly opened the cell doors of four inmates, who then entered Plaintiff's cell and assaulted him. (*Id.*)

Following these assaults, Plaintiff purportedly continued to receive threats. On December 2, 2017, he received a letter from inmate "Solo" warning of additional assaults. (*Id.* at 13.) The following day, Plaintiff provided four threatening letters that he had received from other inmates and was allegedly told by Defendant Parra that Parra had heard about staff "directing . . . attacks against Plaintiff." (*Id.* at 14.) Plaintiff was then transferred to Bachman Detention Unit, where he was housed with two inmates who said

---

[4] While it is not clear from the Complaint that this assault occurred at the Buckley Unit, Plaintiff states in the grievance he filed regarding the December 19, 2019 assault that he was assaulted by an inmate who had previously assaulted him "while @ Buckley Unit." (Doc. 7, Exh. A, Att. 1 at 1.)

they planned to "f---him up" and told Plaintiff they had heard from staff that Plaintiff was a confidential informant who had exposed himself to a female CO. (*Id*. at 14.) Plaintiff notified staff about this threat and was moved to Stiner Unit. (*Id*.) On December 14, 2017, a CO allegedly told Plaintiff that other COs had said they would not help Plaintiff because he was a "piece of s---." (*Id*. at 16.)

The following day, Plaintiff was transferred to Rast Max Unit, where his new cellmate said he knew about the alleged exposure incident and Plaintiff's confidential informant status and told Plaintiff he needed to leave the pod. (*Id*.) On December 18, 2017, Plaintiff was transferred to a new cell, 3A-5-14. (*Id*. at 17.) On January 2, 2018, Defendant Soliz allegedly told inmates in Plaintiff's pod that they should not "mess with" Plaintiff because he was a confidential informant. (*Id*.) According to Plaintiff, Soliz also instructed another inmate to tamper with Plaintiff's food trap door so that Plaintiff would get in trouble. (*Id*.)

Plaintiff next argues that Defendants have continued to place him "in harm's way," underscoring his likelihood of success in this lawsuit and demonstrating that he will likely suffer irreparable harm in the absence of injunctive relief. (Doc. 4 at 5.) As support for this claim, Plaintiff cites an assault that allegedly occurred at Rast Max Unit on December 19, 2019. (*Id*. at 2.) According to Plaintiff, he was assaulted on that date by "Monster," the same inmate who allegedly assaulted him on November 9, 2017. (*Id*. at 2, 3.) In addition, Plaintiff cites an email from his attorney to ADC officials and counsel stating that Plaintiff's decision to press charges against "Monster" following the December 19, 2019 assault "has been broadcast to the inmate population," resulting in daily threats from other inmates. He also references an episode in which he was "locked up for five hours in the shower" on January 12, 2020. (*Id*. at 2-3.)

Plaintiff also claims that the balance of equities tips in his favor. (*Id*. at 5-6.) While he is allegedly suffering daily under fear that he will not survive the rest of his prison sentence, an injunction would impose no hardship on Defendants because they would merely be "doing the job that the State pays them to do." (*Id*. at 5.)

Finally, Plaintiff argues that the public interest favors an injunction because it is in the public interest for state officials to obey the Constitution and other laws. (*Id.* at 6.)

Attached to Plaintiff's Motion is a letter he sent to his attorney on or around January 13, 2020. In this letter, Plaintiff discusses the December 19, 2019 assault;[5] conversations Plaintiff overheard in which inmates were discussing his decision to press charges against "Monster"; and Plaintiff's housing preference, which he identifies as "Rast Max's (3-B) RTH" with all his "normal benefits," such as the ability to order commissary, make telephone calls, receive visitors, and possess property. (Doc. 4-1 at 4-5, 10, 13, 16-18.) Plaintiff states, "If it's not to move to 3-B-RTH w/full privil[e]ges (until I am released) for my safety then leave me here." (*Id.* at 19.) Plaintiff has also attached email communications between Plaintiff's attorney and ADC officials and counsel reflecting that he notified these parties of his intent to seek injunctive relief. (Doc. 4-2.)

### B. Response

Defendant Shinn argues that Plaintiff's Motion fails because he has failed to adduce any evidence to support his likelihood of success or a threat of irreparable injury. (Doc. 7 at 5, 7.) Defendant Shinn claims that allegations in a Complaint, "unsupported by 'evidentiary facts,'" are insufficient to grant injunctive relief. (Doc. 7 at 5.) He also points to several categories of documents that would have been "readily available" to Plaintiff, including medical records, grievances, grievance responses, and letters he had purportedly written to staff and received from other inmates. (*Id.* at 6-7.) According to Defendant

---

[5] Plaintiff characterizes this assault as two assaults "that occurred . . . on 12/19/2019 between 1:30 p.m. to 3:00 p.m." (Doc. 4-1 at 13.) According to Plaintiff's letter, he was assaulted once when "Monster" was in the shower and again when "Monster" was led out of the shower. (*Id.* at 4.) Plaintiff also describes a separate December 2019 incident in which Plaintiff was allegedly "slamm[ed]" to the ground by four non-party correctional officers. (*Id.*) Plaintiff does not appear to seek any injunctive relief relating to this incident. Nor could he, as any claim against them is outside the scope of the Complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Center*, 810 F.3d 631, 636 (9th Cir. 2015) ("[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction"); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (a party seeking injunctive relief must establish a relationship between the claimed injury and the conduct asserted in the complaint).

Shinn, Plaintiff's failure to supply any such evidence precludes a grant of injunctive relief here. (*Id*. at 7.)

Defendant Shinn also points to evidence allegedly rebutting several of Plaintiff's contentions. First, Shinn disputes Plaintiff's characterization of "Monster" as a "known assailant," citing an attached Declaration in which CO IV Jonathan Cameron states that he was unable to locate any information in the Buckley Unit records regarding a 2-on-1 assault against Plaintiff (i.e., the assault allegedly committed by "Monster" and "Insane"). (*Id*. at 6; Doc. 7-1 at 9 ¶ 28.) Next, Shinn challenges Plaintiff's portrayal of the December 19, 2019 assault, referring to evidence that Plaintiff initiated the encounter with "Monster." (Doc. 7 at 6.) Specifically, Shinn cites CO IV Cameron's Declaration, which incorporates portions of a grievance filed by Plaintiff on December 24, 2019. (*Id*.; Doc. 7-1 at 4 ¶¶ 10-12.) Plaintiff states therein that he approached shower #3 after being called over by another inmate and extended his hand for a "fist bump," at which point he was "stabb[ed at] . . . violently w/a shank." (Doc. 7-1 at 4 ¶ 12.) Finally, Shinn refutes Plaintiff's claim that he is experiencing an ongoing threat to his safety, pointing to evidence that Plaintiff is housed in protective custody in a single cell, that "Monster" has been placed on Plaintiff's "Do Not House With" (DNHW) list and moved to a distant wing of the prison where he will not come in contact with Plaintiff, and that Plaintiff is subject to an administrative hold that would require any future transfer to be approved by the Offender Services Bureau. (Doc. 7 at 7.)

In addition, Defendant Shinn claims that the facts alleged in the Complaint against Denault, Fink, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz cannot be relied on as support for injunctive relief because these individuals worked at the Buckley Unit in 2017, whereas Plaintiff has been housed in the Rast Max Unit since December 2017. (*Id*. at 5.) According to Shinn, Plaintiff's argument that he is likely to succeed against these Defendants at trial is "meaningless" because these individuals are not alleged to have been involved in the events described in the Motion for Preliminary Injunction and Temporary Restraining Order. (*Id*. at 7.)

Defendant Shinn also challenges the nature of Plaintiff's requested relief. Referring to Plaintiff's request that he be placed in pod Rast Max 3-B, Shinn states that Plaintiff has "do[ne] nothing to explain why his preferred pod would be safer than where he is now[.]." (*Id.* at 8.) Shinn also argues that a transfer to this close-custody pod would be inconsistent with Plaintiff's maximum custody status and would undermine the stated basis for Plaintiff's request—enhanced security—because inmates in a close-custody pod have *greater* freedom of movement than those in maximum custody. (*Id.*) According to Defendant Shinn, Plaintiff has "tacitly admit[ted]" that his request is not about safety by indicating in his Declaration that he wishes to remain where he is unless he can receive full privileges in Rast Max 3-B. (*Id.* at 8.)

With regard to the third and fourth *Winter* factors, Defendant Shinn denies that the equities favor Plaintiff and that the public interest will be served by an injunction. (*Id.* at 9-10.) He argues that Plaintiff's requested relief would impose a large burden on ADC officials because it places Plaintiff at greater, not lesser, risk of assault and disregards Plaintiff's "well-deserved maximum custody status," his DNHW list, and the high-level scrutiny that is currently in place to prevent an unwanted transfer. (*Id.*) Conversely, Shinn claims, continued confinement in Rast Max 3-A imposes no burden on Plaintiff because the inmate who threatened his safety has been moved, Plaintiff is in a single cell and can decline classes, recreation, "or other allegedly dangerous out of cell time" without discipline, and suffers no cognizable hardship by being assigned to Rast Max. (*Id.* at 10.)

**C.** **Reply**

In his Reply, Plaintiff claims that Defendant Shinn has failed to provide any evidence regarding when ADC officials knew that "Monster" should have been on Plaintiff's DNHW list, noting that names of other inmates have been redacted from Defendant Shinn's submission and that, according to Shinn, video cameras in the shower area are blacked out and the criminal investigation report is not yet available. (Doc. 8 at 2-3.) Plaintiff also contends that Shinn overlooked the explanation for approaching shower #3 that Plaintiff provided in the grievance attached to the Cameron Declaration. (Doc. 8

at 2; Doc. 7-1 at 14.) According to that document, Plaintiff "did not know that the inmate in [redacted] shower #3 was the [redacted] guy that assaulted me . . . while at Buckley Unit." (*Id.*) Finally, Plaintiff takes issue with a statement in Defendant Shinn's Response regarding the severity of Plaintiff's injury following the December 19, 2019 assault. (Doc. 8 at 2.)

**V.    Discussion**

As an initial matter, Plaintiff has failed to present any *evidence* to support his claim for preliminary injunctive relief. 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2949 (3d ed. 2019) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction."); *see also Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) (a party seeking injunctive relief "must proffer evidence sufficient to establish a likelihood of irreparable harm"). Plaintiff's unverified Complaint is not evidence. *Cf. Moran v. Selig*, 447 F.3d 748, 759-60 & n.16 (9th Cir. 2006) ("[T]he complaint in this case cannot be considered as evidence at the summary judgment stage because it is unverified."); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423-24 (9th Cir. 1985) (unverified first amended complaint was insufficient to counter a summary judgment motion supported by affidavits). *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction . . . .") (internal citation omitted). The facts set forth in Plaintiff's motion and unsworn declaration also fail to constitute evidence. *Cf. Flaherty v. Warehousemen, Garage & Serv. Station Emps.' Local Union No. 334*, 574 F.2d 484, 486 n.2 (9th Cir. 1978) ("Legal memoranda and oral argument, in the summary-judgment context, are not evidence . . . ."); *Davenport v. Bd of Trs. of State Ctr. Comm. College Dist.*, 654 F. Supp. 2d 1073, 1084 (E.D. Cal. 2009) (declaration that was not signed under penalty of perjury was "not valid evidence" for purposes of summary judgment). And even though Plaintiff refers repeatedly in his Complaint and Motion for Preliminary Injunction and Temporary Restraining Order to documents that would support his claims, such as informal

complaints and grievances, he has failed to supply any such documents or explain his failure to do so. The Court will nevertheless evaluate Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order because the facts asserted in his Complaint and Motion, even if treated as evidence, are insufficient to demonstrate a likelihood of success on the merits of the relevant claim or a likelihood of irreparable injury.

### A. Likelihood of Success on the Merits

In his Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiff contends that he is likely to succeed on his claims against Defendants Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz for allegedly failing to protect him and against Defendants Shinn, Ryan, Larson, Fink, Aven, Chavez, and Parra for allegedly failing to train and supervise front-line correctional officers. However, as Defendant Shinn notes, Plaintiff's claims against Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz are largely premised on actions these Defendants purportedly took (or failed to take) at Buckley Unit in 2017. None of these Defendants is alleged to work in Plaintiff's current housing pod or to have other authority over Plaintiff's safety there.[6] Thus, the only claims that relate to the relief sought herein are the failure-to-train and failure-to-supervise claims asserted against the supervisory Defendants—Defendants Shinn, Ryan, Larson, Fink, Aven, Chavez, and Parra.

Plaintiff has not shown that there are serious questions going to the merits of or a likelihood of success on his failure-to-train and failure-to-supervise claims. The failure to train an officer who has caused a constitutional violation "can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officer] comes into contact." *Long v. Cty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006); *see City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (improper training

---

[6] The only acts allegedly committed by any of these Defendants while Plaintiff was housed at Rast Max consist of statements concerning Plaintiff's confidential informant status that were allegedly made by Defendant Soliz on January 2, 2018, to Plaintiff's then cellmate, Joey Ramirez. These statements do not appear to be connected to the December 19, 2019 assault, which was committed by another inmate nearly two years later, and is the primary basis for Plaintiff's request for injunctive relief.

- 11 -

requires a failure to train so inadequate that it "amounts to deliberate indifference to the rights of persons" impacted by the training); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (sufficiently inadequate supervision of an employee may amount to deliberate indifference for purposes of establishing § 1983 municipal liability). Liability for constitutional violations "is at its most tenuous where a claim turns on a failure to train," however. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, Plaintiff has not attempted to identify the ways in which the Defendants' training or supervision was purportedly inadequate, much less presented evidence to show that any such failure was both deliberately indifferent and the cause of the injuries he suffered at the hands of front-line correctional officers. Plaintiff asks the Court to presume, based on his allegations against Defendants Denault, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz, that such officers were inadequately trained and/or supervised. But "adequately trained officers occasionally make mistakes," and the fact that they do "says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391. In the absence of any argument or evidence concerning the manner in which ADC's training and/or supervision was deficient, Plaintiff has not carried his burden on the first prong of the Court's analysis.

### B. Likelihood of Irreparable Harm

The assertions in Plaintiff's Complaint and Motion for Preliminary Injunction and Temporary Restraining Order are also insufficient to show that Plaintiff faces a present likelihood of irreparable injury. As noted above, the majority of the allegations in Plaintiff's Complaint relate to events that occurred at ASPC-Buckley as the result of acts committed by Defendants Denault, Fink, Chavez, Palomino, Coscorelli, Wickware, Hill, Reyes, and Soliz. Plaintiff does not explain how such allegations demonstrate a likelihood that he will suffer irreparable harm at ASPC-Rast Max.

In addition, there is significant uncontested evidence showing that he is not likely to suffer such harm. Plaintiff does not dispute that the individual who assaulted him on December 19, 2019 has been transferred to another pod and is on his DNHW list. (Doc.

7-1 at 9 ¶ 27.) Plaintiff has likewise failed to challenge Defendant Shinn's evidence showing that he is unlikely to be transferred in light of the administrative hold that has been placed on him and the unavailability of suitable housing alternatives. (Doc. 7-1 at 3 ¶¶ 6-9.) In addition, the evidence submitted by Defendant Shinn—including Plaintiff's own description of the December 19, 2019 assault—shows that when Plaintiff was assaulted, staff acted promptly to restrain his attacker, conduct an investigation, and respond to Plaintiff's medical needs. (Doc. 7-1 at 12-13, 18.)

Plaintiff's claim that he is likely to face irreparable harm in the absence of an injunction is also contradicted by evidence that Plaintiff told Lieutenant Ohshita, immediately following the December 19, 2019 assault, that he "does not have an issue in the pod that h[e] is assigned."[7] (Doc. 7-1 at 18, 25.) Plaintiff does not dispute this statement, nor does he contend that he had any reason to misrepresent his situation to Ohshita, whom he describes in his letter to counsel as a person he "know[s] . . . [he] can trust." (Doc. 4-1 at 6.)

With regard to Plaintiff's allegations regarding threats made by other inmates who learned that he intended to press charges against "Monster," Plaintiff does not identify such threats in his Motion or explain why they cannot be mitigated by the security measures described in Defendant Shinn's Response. In his letter to counsel, he describes being asked about his decision to press charges against "Monster," but he does not allege that any threats were made against him. (Doc. 4-1 at 16-17.) Nor does he identify the circumstances surrounding his alleged confinement in the shower or explain how such incident constitutes evidence of an irreparable risk of harm.

Finally, Plaintiff has not explained why any threat of irreparable harm would be abated by a transfer to Rast Max 3-B, the relief he repeatedly states that he is seeking in his letter to counsel. (Doc. 4-1 at 2, 3, 9, 10, 11, 17, 18, 19.) He does not characterize this

---

[7] Although this evidence is not necessarily admissible, it is within the discretion of the Court to accept inadmissible evidence "for purposes of deciding whether to issue the preliminary injunction.'" *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988)).

pod as free of individuals named in his DNHW list or offer any rebuttal to Defendants' point regarding the relative safety afforded by maximum—as opposed to close—custody. And Plaintiff's allegation that he fears for his life is severely undermined by his clear indication that he only wishes to be transferred to Rast Max 3-B pod (or any other unit) if he will enjoy "all privileges." If Plaintiff truly feared irreparable injury, his safety would surely be paramount to his access to commissary, the telephone, visitation, and the like.

To the extent Plaintiff is requesting only that he be "kept safe," as stated in his Motion, he has failed to rebut Defendant Shinn's evidence that this goal is best achieved by housing Plaintiff in protective custody in Rast Max and allowing him to decline recreation and classes. (Doc. 7-1 at 9-10 ¶¶ 29-35.) Accordingly, Plaintiff has failed to show that he is likely to face irreparable harm in the absence of the requested relief, or to carry the heavy burden borne by a movant seeking injunctive relief. *See Ctr. for Competitive Politics*, 784 F.3d at 1312. Plaintiff's Motion for Preliminary Injunction will therefore be denied.

## VI. New Allegations in Motion for Ruling

In his Motion for Ruling, Plaintiff asserts that "Insane" was recently transferred to a cell near Plaintiff and, on January 24, 2020, "Insane" threatened to burn down the house where Plaintiff's mother and grandmother live, citing their address. (Doc. 14 at 2-3, 16.) Plaintiff also asserts that his counsel received a text message from Plaintiff's mother on January 26, 2020, indicating that a prisoner who had been placed near Plaintiff's cell "knew her address[] and was threatening to burn her house down." (*Id.* at 2.) Defendant Shinn will be ordered to respond to these new allegations within 10 days of this order. Plaintiff will then have 5 days to file any reply.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Ruling (Doc. 14) and Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4).

. . . .

(2) Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 4) is **denied**.

(3) Plaintiff's Motion for Ruling (Doc. 14) is **granted** in part to the extent Plaintiff seeks to expedite consideration of his Motion for Preliminary Injunction and Temporary Restraining Order.

(4) Defendant Shinn will have **10 days** from the filing date of this Order to respond to the balance of the Motion for Ruling, which is construed as a separate motion for injunctive relief, as set forth herein. Plaintiff may file a reply within **5 days** of service of Defendant's Response.

Dated this 2nd day of March, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge