**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Eric Perez, | No. CV 19-05602-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Eric Perez, who is in the custody of the Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) and is represented by counsel, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's Emergency Motion for Preliminary Injunction & Declaration Re: Legal Calls (Doc. 32).

The Court will deny the Motion.

**I.    Background**

On screening of Plaintiff's Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment failure-to-protect and failure-to-train claims in Counts One and Two against various ADCRR employees. (Doc. 5.)

**II.    Motion for Preliminary Injunction**

**A.    Background**

Prior to filing the instant Motion, on April 3, 2020, Plaintiff filed a document titled "Emergency—Notice of Stabbing" (Doc. 30), which related the following events. On April 1, 2020, while Plaintiff was in the shower, a prisoner named "Rudy" stabbed Plaintiff

repeatedly in the leg and heart. (*Id*. at 1-2.) Rudy, who was housed in the Arizona State Prison Complex (ASPC)-Lewis, Rast Unit, 3 Able 3, had been allowed out of his cell, and he stabbed Plaintiff with a shank attached to a broomstick. (*Id*. at 1.) Plaintiff lost a large amount of blood and was taken the emergency room. (*Id*. at 2.) While at the hospital, guards told Plaintiff that he would be sent to the Rast Max unit, where two other prisoners—Dewon Hurd (aka "Insane") and Armando Garcia (aka "Monster")—would have the ability to have Plaintiff assaulted again. (*Id*. at 2.) At the time, Plaintiff was wearing a face mask due to the risk of COVID 19, and he took the mask off his face "in order to force them to move him to a medical quarantine instead of back into danger." (*Id*.)

Plaintiff was moved to the ASPC-Lewis, Stiner Detention Unit, where, on April 3, he had an emergency legal call with his attorney, Stacy Scheff. (*Id*.) During the call, Plaintiff waived attorney-client privilege in order to have CO III Vargas present. (*Id*.) In addition, Scheff conferenced into the call the ADCRR's Criminal Investigations Unit and the Warden's office to get information about the assailant's identity and to alert them about the ongoing danger to Plaintiff. (*Id*.)

Plaintiff did not seek any particular relief in the Notice, but in an abundance of caution, the Court ordered Defendants to file a response to the Notice by April 16, 2020 and allowed Plaintiff 7 days thereafter to file a reply. (Doc. 31.) The Court will address the Notice and responses once briefing is complete.

**B.    Emergency Motion**

Plaintiff filed the instant Motion on April 6, 2020, seeking an order that Plaintiff be allowed to have legal calls while he is in quarantine. (Doc. 32.) Plaintiff asserts that, after the April 3, 2020 phone call with Scheff and prison officials, Scheff received an email from ADCRR Deputy General Counsel Courtney Glynn "threatening to revoke all phone calls between Plaintiff and [his attorney]." (*Id*. at 2.) When Scheff requested another call with Plaintiff to check on his wellbeing and to continue taking his statement about the events surrounding the stabbing, "Glynn responded that Plaintiff's legal calls were to be

suspended for the remainder of his quarantine, which is scheduled to end in 10−11 days." (*Id*. at 2.)

Plaintiff requests an "emergency order allowing phone calls with [Scheff] and declaring that Plaintiff may waive attorney/client privilege for the purpose of resolving the imminent threat to his life." (*Id*.)  The Court ordered expedited briefing from the parties and that briefing is now complete.

### C.  Defendant Shinn's Response

Defendant ADCRR Director Shinn responded on April 8 that Plaintiff "intentionally subjected himself to a 14-day COVID-19 quarantine by deliberately removing his personal protective equipment at the hospital" and afterwards, Scheff "willfully violated ADCRR policy by initiating a three-way call—not a legal call—between herself, [Plaintiff], and ADCRR officers." (Doc. 34 at 1.)  Shinn states that "[b]ecause of the unprecedented complications of dealing with two repeat policy violators amid a growing global health pandemic, the ADCRR is unable to facilitate any additional legal calls between this attorney and this inmate until his COVID-19 quarantine expires in a mere nine days." (*Id*.) Shinn asserts that Plaintiff's quarantine will remain in place until April 17, unless he develops any symptoms indicative of COVID-19, and that Plaintiff still has access to standard legal mail and his access to the courts is not adversely impacted. (*Id*. at 1-2.)

Shinn explains that ADCRR's legal call policy is outlined in Department Order (DO) 902-12 and that legal calls cannot be monitored. (*Id*. at 3.)  Under DO 902-12, legal calls can be discontinued or denied to accommodate security concerns as long as other means of legal communication remain available to the prisoner. (*Id*.)  DO 915 prohibits prisoners from participating in three-way calls "in order to prevent unauthorized use of the prisons' phone systems that can be detrimental to institutional security." (*Id*. at 3-4.)

According to Shinn, on April 3, Scheff arranged to have a legal call with Plaintiff due to the recent assault, but "[r]ather than confidentially discussing legal matters, [Plaintiff] and his attorney used the phone to hector ADCRR officers for documents and information relating to [Plaintiff's] April 1 assault, which the ADCRR is currently actively

investigating." (*Id*. at 4.) Schinn says Scheff was informed that this was an inappropriate means of obtaining information about a case and that Plaintiff and Scheff's request to the speak to the Warden additionally violated ADCRR policy regarding inmate-staff communications. (*Id*.)

Shinn states that in August 2018, the ADCRR imposed special protocols on Scheff "to account for her repeated use of legal calls to flout its policies forbidding three-way calls and inappropriate inmate-staff communications." (*Id*.) Scheff challenged these special protocols in Arizona state court, and the state court upheld them. (*Id*.) The special protocols require Scheff to communicate with her incarcerated clients via Polycom—a computer-based, secure and confidential system—in lieu of phone calls to ensure that "no inappropriate three-way calls are conducted under the guise of a legal call." (*Id*.)

Shinn argues that Scheff "appears to have taken advantage of the exigent circumstances attending the COVID-19 crisis to circumvent the Polycom system and resume her deliberate and unethical abuse of the ADC[]'s legal call policies." (*Id*.) Because Plaintiff could not be moved to a Polycom equipped room due to his quarantine status, staff allowed a standard legal call due to the serious nature of his recent assault. (*Id*. at 4-5.) The prison cannot allow Plaintiff to use a community phone for legal calls because ADCRR is experiencing "unprecedented stress and requiring laborious disinfection and isolation protocols for the safety of its inmates and staff." (*Id*. at 5.) Shinn asserts that Plaintiff "potentially contaminating an office or community phone is simply untenable" because the Department "lacks the resources to effectively decontaminate the areas that would be impacted by allowing such a call during [Plaintiff's] current quarantine." (*Id*.)

### D.     Plaintiff's Reply

Plaintiff replies that Shinn is trying to impeach counsel "with evidence of prior issues regarding conferencing in third-parties on legal calls," which counsel contends are "irrelevant to the issues before the Court regarding the danger to Plaintiff." (Doc. 37 at 4.) Counsel argues that the Court would have to conduct a collateral issue trial to determine if counsel was in violation of any lawful ADCRR rule, that she has "requested a Declaration

regarding this issue, and would bifurcate that action in order to allow the Court to rule in a timely manner on the more urgent issue of calls with Plaintiff for the remainder of his quarantine." (*Id.*)

Counsel further asserts that the Polycom system does not prevent three-way calling and she "has frequently conferenced in necessary people to Polycom calls without issue." (*Id.*) And she states that she is attempting to appeal the state court decision which she says only ruled "that the statutory exemption for ADC mandate[d] that the case be dismissed." (*Id.*)

Plaintiff states that he "does not trust the prison staff who Director Shinn claims should be allowed to investigate to the exclusion of anyone else." (*Id.* at 5.) Plaintiff contends that he has no other means of communication during the quarantine period and that "mail would not get there until the end of the quarantine period, and there is no guarantee that Plaintiff will not be put in harm's way again in that time." (*Id.*) The emergency situation, Plaintiff says, "is not just the recent stabbing, but the *repeated* failure to protected Plaintiff." (*Id.*) According to Plaintiff, he was not badgering or hectoring anyone during the legal call and was only trying to get information to support the Notice of Stabbing filed with the Court. (*Id.* at 6.)

## III. Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

Generally, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *see De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunctive relief is inappropriate for matters "lying wholly outside the issues in the suit"). An exception to this rule arises where the injunctive relief sought is related to access to the courts. *See Prince v. Schriro, et al.*, CV 08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (where the relief sought relates to a prisoner's access to the court, "a nexus between the preliminary relief and the ultimate relief sought is not required[,]" and the court need not consider the merits of the underlying complaint) (citing *Diamontiney v. Borg*, 918 F.2d 793, 796 (9th Cir. 1990)). The First and Fourteenth Amendment right of access to the courts encompasses a right to litigate without active interference by prison officials. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.2 (9th Cir. 2015). In analyzing an "active interference" claim, "the court must consider whether the plaintiff has alleged an actual injury to court access." *Silva*, 658 F.3d at 1102 (internal quotation and citation omitted). With respect to an existing case, the actual injury must be "actual prejudice . . . such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348-49 (1996).

**IV.    Discussion**

Plaintiff does not address any of the *Winter* factors necessary for obtaining injunctive relief. Nevertheless, the Court will address the merits of Plaintiff's Motion.

Although Plaintiff's Motion is unrelated to the claims currently before the Court, because his Motion potentially relates to his access to the court, the Court may entertain his request for injunctive relief. Plaintiff, though, is not entitled to relief under an access-to-courts claim because he has not alleged sufficient facts to establish actual injury such as the inability to meet a filing deadline or to present a claim. Plaintiff's attorney had an opportunity to interview Plaintiff about the April 1, 2020 stabbing during the legal call on

April 3, 2020.  It is also not clear why Plaintiff's counsel needed to contact prison officials while Plaintiff was on the legal call rather than conducting her investigation of the stabbing on her own.

To the extent Plaintiff is claiming he needs to speak with his attorney while he is in quarantine for his own safety, he does not present any facts showing he is in danger while he is in quarantine, which is set to expire on April 17, 2020.  Thus, Plaintiff's fear of harm appears speculative.  *See Lewis*, 518 U.S. at 348-49; *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F. 2d 668, 674-675 (9th Cir. 1988) (speculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction).

Accordingly, based on this record, Plaintiff has made no showing of irreparable harm that would justify the "extraordinary remedy" of granting preliminary injunctive relief.  This is particularly true in light of the Supreme Court's admonition that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). The Court will deny Plaintiff's request for injunctive relief.

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Emergency Motion for Preliminary Injunction & Declaration Re: Legal Calls (Doc. 32), and the Motion is **denied**.

Dated this 13th day of April, 2020.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge